UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE CLEAN WATER NETWORK and TENNESSEE SCENIC RIVERS ASSOCIATION, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>TENNESSEE VALLEY AUTHORITY, )<br>)<br>Defendant. ) | NO. 3:15-cv-00424<br>JUDGE CRENSHAW |

## MEMORANDUM OPINION

The Tennessee Clean Water Network and Tennessee Scenic Rivers Association ("Plaintiffs") filed a Complaint against the Tennessee Valley Authority ("TVA") on April 14, 2015, alleging numerous violations of the Clean Water Act ("CWA") related to TVA's operation of a coal-fired power plant about five miles south of the city of Gallatin, Tennessee ("Gallatin Plant"). (Doc. No. 1.) Over a roughly one-year period beginning on June 15, 2015, TVA filed five dispositive or partially dispositive motions. (Doc. No. 12; Doc. No. 28; Doc. No. 51; Doc. No. 57; Doc. No. 102.) On September 9, 2016, the Court entered an Order and Memorandum Opinion granting TVA's motions in part and denying them in part, as well as resolving other outstanding motions and setting a status conference for October 19, 2016. (Doc. No. 139; Doc. No. 140.) Following the status conference, the Court entered a pretrial order setting pretrial deadlines including a December 23, 2016, deadline for witness lists, exhibit lists, direct testimony of expert witnesses, and stipulations. (Doc. No. 142 at 2.) On December 9, 2016—ninety-one days after the Court's Order on TVA's various dispositive motions and exactly fourteen days before the parties' December 23, 2016, deadline—TVA filed a Motion to Reconsider (Doc. No.

1

154) directed at one aspect of the Court's earlier ruling, its denial of TVA's Motion to dismiss Plaintiffs' claims for penalties under the CWA (Doc. No. 28). For the reasons discussed below, TVA's Motion to Reconsider will be **DENIED**.

## MOTION TO RECONSIDER

On September 1, 2015, TVA moved the Court "to dismiss the claim for civil penalties asserted against TVA in this case because Congress has not expressly authorized such penalties against TVA." (Doc. No. 28 at 1.) TVA argued that it could not be made subject to civil penalties under the CWA in light of "Congress's intention that, as a federal government agency and instrumentality, TVA retains its sovereign immunity from punitive fines and damages absent an explicit waiver." (Doc. No. 29 at 6.) TVA relied on the Supreme Court's holding, in United States Department of Energy v. Ohio, 503 U.S. 607, 620–26 (1992), that the U.S. Department of Energy was not subject to penalties under the CWA because the CWA did not clearly abrogate the government's preexisting sovereign immunity. TVA argued that as an "executive branch agency" (Doc. No. 29 at 5) it was entitled to the same protection, despite the fact that it was subject to a broad waiver of sovereign immunity pursuant to the "sue-and-be-sued" clause found in 16 U.S.C. § 831c(b).

The Court rejected TVA's argument, citing Supreme Court authority for the proposition that federally formed entities with broad sue-and-be-sued clauses, like TVA, "should generally be held to have a capacity for 'liability [that] is the same as that of any other business.'" (Doc. No. 139 at 24 (quoting Franchise Tax Bd. of Cal. v. U.S. Postal Serv., 467 U.S. 512, 520 (1984)). The Court considered both TVA's sue-and-be-sued clause as well as the CWA itself, concluding that "[t]he CWA . . . evinces no intent to change the scope of TVA's well-established waiver of

sovereign immunity." (Id. at 25.) The Court accordingly denied TVA's request to dismiss any claims for CWA penalties against it.

TVA now asks the Court to reconsider that decision. TVA concedes that the Federal Rules of Civil Procedure provide no basis for such a motion, but argues that the Court should nevertheless consider its argument pursuant to the Court's authority, under Fed. R. Civ. P. 54(b), to revise its interlocutory rulings "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." See Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."). Plaintiffs respond that this Court has previously held that Local Rule 7.01(b) imposes a 14- or, at most, 21-day limitation on the filing of motions to reconsider. See Simpson v. U.S. Bank Nat'l Ass'n, No. 3:13-CV-00325, 2013 WL 3224341, at *2 (M.D. Tenn. June 25, 2013). Plaintiffs note also that the timing of TVA's motion placed Plaintiffs' fourteen-day deadline to respond on the same day as a preexisting major deadline for pretrial disclosures.

While TVA is likely correct that the Court has the formal authority revisit its earlier decision, it gives very little procedural or prudential reason why the Court should do so. "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Rodriguez, 89 F. App'x at 959 (citing Reich v. Hall Holding Co., 990 F. Supp. 955, 965 (N.D. Ohio 1998)). TVA relies on no intervening changes in the law or new evidence. Instead, it argues merely that "reconsideration is justified here because the additional analysis of the issue discussed [in TVA's Motion to Reconsider] was not previously presented to the Court." (Doc. No. 155 at 4.) TVA cites no authority for the proposition that a

3

reconsideration is warranted merely because a party has belatedly discovered a new argument it had previously omitted.

Even assuming TVA's argument is one that is appropriate for a motion to reconsider, it is difficult for the Court to fathom what would justify waiting three months to file such a motion, then doing so in a manner that heaps the task of responding to the motion on top of the already significant burdens of completing pretrial filings in a matter as complex as this one. Plaintiffs—who themselves likely have a number of issues on which they wish the Court had ruled differently—have presumably proceeded under the reasonable assumption that the Court's prior ruling was final. Granting TVA's motion would prejudice Plaintiffs both by punishing that reasonable reliance and subjecting Plaintiffs to a process whereby their opponent was granted a second chance to argue its points while they were not. TVA's delay, moreover, threatens more than the fairness and efficiency of just these proceedings: invoking the Court's authority to revise its earlier holding at this stage would create an incentive for every future litigant to seek a second bite of the apple at the time least opportune for its opponent.

Although TVA's delay in filing its motion is alone sufficient to justify denial, the Court notes that it would also be inclined to deny TVA's argument on the merits. TVA argues that the Court's analysis of TVA's liability for penalties was deficient because the Court failed to employ the "two-step analysis" set forth by the Supreme Court in <u>FDIC v. Meyer</u>, 510 U.S. 471 (1994). (Doc. No. 155 at 1). In that case, the Supreme Court made the common-sense observation that a waiver of sovereign immunity is insufficient to create liability for the government if the underlying substantive cause of action does not do so itself: "The first inquiry is whether there has been a waiver of sovereign immunity. If there has been such a waiver, as in this case, the second inquiry comes into play—that is, whether the source of substantive law upon which the claimant relies

provides an avenue for relief." Id. at 484 (citing United States v. Mitchell, 463 U.S. 206, 216–17 (1983)); see also U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd., 540 U.S. 736, 743 (2004).

The Court's prior opinion did consider both the scope of TVA's waiver of sovereign immunity and whether the CWA intended to exempt entities such as TVA from liability for penalties, albeit without expressly bifurcating the analysis between sovereign immunity and non-sovereign immunity concerns as TVA now proposes. (Doc. No. 139 at 24–25.) In this particular instance, however, the difference is more cosmetic than substantive. Meyer strongly reaffirmed the principle that a broad sue-and-be-sued clause is sufficient to subject a government-created entity to the type of "suit or incident of suit to which private businesses are amenable as a matter of course," Meyer, 510 U.S. at 481, absent some specific reason that the entity should be considered exempt. The Court's earlier conclusion that TVA has identified nothing in the CWA that "alters the broad, preexisting waiver to be found in the sue-and-be-sued clause" (Doc. No. 139 at 25) applies with equal force here because TVA has identified nothing in the CWA that would limit TVA's substantive liability for penalties.

TVA attempts to bolster its argument by citation to a series of cases limiting TVA's liability for conventional tort claims in light of the discretionary or governmental character of its actions. See, e.g., Adkisson v. Jacobs Eng'g Grp., Inc., 790 F.3d 641, 645 (6th Cir. 2015), cert. denied, 136 S. Ct. 980 (2016); Edwards v. TVA, 255 F.3d 318, 324 (6th Cir. 2001); Queen v. TVA, 689 F.2d 80, 86 (6th Cir. 1982). In so doing, TVA becomes the party overlooking the Meyer framework. Meyer instructs the court to look first to the initial waiver of sovereign immunity, and then to "the source of substantive law upon which the claimant relies." 510 U.S. at 384. Plaintiffs do not rely on conventional tort principles, but rather the strict liability regime of the CWA. To

defeat liability under the second <u>Meyer</u> step, therefore, TVA must find support for its position in the CWA itself. It has not.

## **CONCLUSION**

For the foregoing reasons, TVA's Motion to Reconsider the Court's Interlocutory Ruling on the Issue of Punitive Civil Penalties for Alleged Past Violations of the Clean Water Act will be **DENIED**.

An appropriate order will issue.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE