IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE CLEAN WATER NETWORK and TENNESSEE SCENIC RIVERS ASSOCIATION, | ) ) ) ) | No. 3:15-cv-00424 |
| Plaintiffs, | ) ) | Judge Waverly Crenshaw |
| v. | ) ) | Magistrate Judge Holmes |
| TENNESSEE VALLEY AUTHORITY, | ) ) ) | |
| Defendant. | ) | |

### JOINT PRETRIAL ORDER

Plaintiffs Tennessee Clean Water Network and Tennessee Scenic Rivers Association ("Conservation Groups") and Defendant Tennessee Valley Authority, pursuant to the Court's October 20, 2016 Order (Dkt. 142), submit this Joint Proposed Pretrial Order.

**I. STATUS OF THE PLEADINGS.**

The Parties agree that the pleadings are amended to conform to the Pretrial Order and that the Pretrial Order supplants the pleadings.

**II. STATEMENT OF BASIS FOR JURISDICTION.**

This Court has jurisdiction over Plaintiffs' claims pursuant to the citizen suit provisions of the Clean Water Act, 33 U.S.C. §1365and 28 U.S.C. § 1331.

**III. CONSERVATION GROUPS' THEORY OF THE CASE.**

This is a Clean Water Act citizens' enforcement suit brought by Conservation Groups arising out of TVA's disposal of coal ash generated and disposed of at its coal burning power plant located in Sumner County near Gallatin, Tennessee. Conservation Groups claim that TVA has discharged and continues to discharge coal ash and constituents of coal ash, including heavy
1494183_2

metals and other toxic substances, into the Cumberland River, a water of the United States, through the hydrological connection of the groundwater and the Cumberland River, and also directly into the Cumberland River itself. These discharges come from an unpermitted abandoned ash disposal area as well as from a permitted active Ash Pond Complex, and discharges from both violate the Clean Water Act. Both coal ash impoundments were built within the groundwater table and on karst terrain that is prone to—and regularly experiences—sinkholes, conduit flows, and fissures. Pollutants from both ash disposal areas have and continue to contaminate the groundwater, which flows directly into the Cumberland River. In addition, the Active Ash Pond complex has and continues to discharge pollutants into the Cumberland River through an historic drainage channel, known as Sinking Creek.

Conservation Groups also allege that unpermitted discharges from the Ash Pond Complex violate TVA's National Pollution Discharge Elimination System permit insofar as the Permit requires disposal of material removed by treatment works in such a way that it prevents pollution of any surface or subsurface waters; requires TVA to properly operate and maintain all facilities and systems for collection and treatment; requires a notice of non-compliance for threat to human health or the environment; and prohibits overflows. By virtue of these continuous and ongoing Permit violations, TVA also violates the Clean Water Act.

## IV. TVA'S THEORY OF THE CASE.

On September 9, 2016, the Court dismissed Plaintiffs' Claims A, C, D, E.b, E.c, E.d, and E.e "except insofar as they deal with one or both of the following: discharges from the Non-Registered Site into the Cumberland River; and discharges from the Ash Pond Complex via hydrologic flows that are not seeps alone." (Doc. 139 at PageID 5368.) The Court also held that "[o]pen factual issues exist with regard to the extent of the discharges that fall within these two

circumscribed categories;" that "TVA has demonstrated that some seeps were contemplated by TDEC at the time of the reissuance of the NPDES Permit in 2012;" and that, if the alleged "discharges on which Plaintiffs rely were of the type disclosed to and reasonably contemplated by TDEC at the time the NPDES Permit was under consideration;" the discharges would be subject to the permit shield and, therefore, lawful under the CWA. *Id.* at PageID 5367.

At trial, Plaintiffs have the burden of proving the existence of the alleged flows from the NRS (seeps and non-seep flows via hydrologically connected groundwater) and from the Ash Pond Complex (non-seep flows via hydrologically connected groundwater) and that the alleged flows are covered discharges under the CWA. If Plaintiffs make these required showings, Plaintiffs must then prove that the flows were not within TDEC's reasonable contemplation when TDEC reissued the Gallatin Permit in 2012. And even if Plaintiffs could meet their burden of proof on these threshold matters, Plaintiffs cannot meet their burden of proving that the alleged flows are beyond those which TDEC reasonably contemplated when it reissued the Gallatin Permit in 2012. As to remedies, Plaintiffs cannot meet their burden of proving there has been environmental harm to the Cumberland River resulting from TVA's operation of Gallatin. Moreover, even if some minimal environmental harm was shown, the financial cost and environmental impacts of the extraordinary injunctive remedy requested by Plaintiffs, excavation and disposal off-site, would be grossly disproportionate, not in the public interest, and punitive.

## V. STATEMENT OF THE ISSUES.

### A. Conservation Groups' Statement of Triable Issues:

1. Whether Defendant is violating the Clean Water Act by discharging pollutants from the Gallatin site to surface waters of the United States directly and via hydrologically-connected groundwater from the Non-Registered Site into the Cumberland River.

2. Whether Defendant is violating the Clean Water Act by discharging pollutants from the Gallatin site to surface waters of the United States directly or via hydrologically-connected groundwater due to hydrologic flows that are leaks based entirely or in part on faster-moving conduit flows, such as through sink holes and fissures.

3. Whether Defendant should be permanently enjoined from violating the Clean Water Act with respect to pollution discharged from the Non-Registered Site.

4. Whether Defendant should be permanently enjoined from violating the Clean Water Act with respect to pollution discharged from the Ash Pond Complex.

5. Whether Defendant is violating Part I.A. Subsection (c) of the NPDES Permit and, in turn, the Clean Water Act, by allowing pollutants from solids, sludges, and other pollutants removed in the course of treatment or management of coal ash waste to enter state waters. (Dkt. 1 at PageID 48: Claim E.b).

6. Whether Defendant is violating Part II.A. Subsection (4.a) of the NPDES Permit and, in turn, the Clean Water Act, by failing to properly operate and maintain all facilities and systems (and related appurtenances) for collection and treatment which are installed or used by the permittee to achieve compliance with the terms and conditions of the permit. (Dkt. 1 at PageID 49: Claim E.c)

7. Whether Defendant is violating Part II.C. Subsection (2) of the NPDES Permit and, in turn, the Clean Water Act, by failing to provide notice of non-compliance to the Tennessee Department of Environment and Conservation Division of Water Pollution Control within 24-hours when non-compliance could cause a threat to public drinking supplies, human health, or the environment. (Dkt. 1 at PageID 50: Claim E.d).

8. Whether Defendant is violating Part II.C. Subsection (3) of the NPDES Permit and, in turn, the Clean Water Act, by failing to prevent the discharge to land or water of waste from any portion of the collection, transmission, or treatment system other than through the permitted outfalls. (Dkt. 1 at PageID 51: Claim E.e).

9. Whether Defendant should be permanently enjoined from violating the Clean Water Act and/or the NPDES Permit as alleged in Counts A, C, D, E.b, E.c, E.d, or E.e of the Complaint, or any combination thereof, including injunctive relief to (a) prevent the flow of coal ash pollutants into groundwater from the coal ash disposal facilities, (b) prevent the flow of contaminated groundwater into the surrounding surface waters, (c) remove as quickly as practicable all existing coal ash from the Gallatin site into an appropriately lined industrial solid waste landfill away from waterways, and (d) remediate the groundwater contamination resulting from TVA's unpermitted discharges of pollutants from the Gallatin plant.

10. Whether civil penalties should be assessed against TVA of up to $37,500 per violation per day pursuant to sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365(a), and 74 Fed. Reg. 626-27 (Jan. 2009). Effective August 1, 2016, the U.S. Environmental Protection Agency increased the maximum civil monetary penalties from $37,500 per day per Clean Water Act violation to $51,570 per day per violation. *See* 40 C.F.R. Part 19.

This increase applies to violations that occurred after November 2, 2015 and are assessed on or after August 1, 2016.

11. Whether Conservation Groups should be awarded the cost of this action, including reasonable attorneys' fees and expert fees, as authorized by the Clean Water Act § 505(d), 33 U.S.C. § 1365(d).

12. Whether Conservation Groups should be awarded such further and additional relief as the Court deems just and proper.

B. **TVA's Statement of Triable Issues:**

TVA incorporates herein by reference, as triable issues, TVA's proposed findings of fact and conclusions of law previously filed in this case. (Doc. 148) and the factual and legal defenses asserted in TVA's Answer (Doc. 14). TVA further states that the triable issues in this case were substantially narrowed by the Court's September 9, 2016 Memorandum Opinion, and based on those rulings, many of the triable issues listed by Plaintiffs (i.e., issues 2, 5, 6, 7, 8, and 9) were dismissed or have been restated without any amendment of the complaint, and TVA objects to any effort by Plaintiff to litigate at trial claims that were not previously alleged or which were previously dismissed.

Consistent with the pleadings and the Court's rulings, the following are triable issues.

1. Whether the CWA applies to groundwater, regardless of whether that groundwater is hydrologically connected to navigable surface waters.

2. Whether Plaintiffs have met their burden of proving that non-seep flows from the Ash Pond Complex (such as through sinkholes and fissures) actually and physically "*add*" pollutants to the Cumberland River via hydrologically connected groundwater.

3. Whether Plaintiffs have met their burden of proving a direct link between contaminated ground waters and navigable waters and tracing pollutants from the alleged point source to surface waters.

4. Whether Plaintiffs have met their burden of proving the existence of non-seep flows from the Ash Pond Complex to the underlying groundwater.

5. Whether Plaintiffs have met their burden of proving that there are seep flows from the Ash Pond Complex to the Cumberland River via hydrologically connected groundwater that are beyond TDEC's reasonable contemplation.

6. Whether the Non-Registered Site is a point source/conveyance within the meaning of the CWA.

7. Whether the diffuse sources of water at the Non-Registered Site are nonpoint sources.

8. Whether there is any "addition" of a pollutant from the Non-Registered Site to the Cumberland River.

9. Whether the alleged flows from the Non-Registered Site to the Cumberland River are beyond TDEC's reasonable contemplation.

10. Whether TVA has violated any specific permit provision alleged by Plaintiffs that was not been previously dismissed.

11. Whether Plaintiffs have met their burden of proving that TVA is not in compliance with the Permit's "Sludge/Solid Waste Removal" provision, "Proper Operation and Maintenance" provision, and "24-Hour Notice" provision.

12. Whether the permit's Sanitary Sewer Overflow provision applies only to sewage waste.

13. Whether there is any basis for the imposition of coercive civil penalties.

14. Whether there has been irreparable injury resulting from TVA's alleged violations of the permit.

15. Whether any remedy in equity would be warranted, and, more specifically whether the economic costs and enviornmental impact of Plaintiffs' requested remedy of closure-by-removal would be in the public interest.

## VI. STATEMENT OF THE RELIEF SOUGHT.

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), Conservation Groups seek civil penalties for each of the TVA's violations of the Clean Water Act of $37,500 per day pursuant to 33 U.S.C. § 1319(d) for violations occurring before November 2, 2015 and $51,570 for violations since November 2, 2015. Conservation Groups also seek an enforcement order and/or injunctive relief in order to achieve compliance with the Clean Water Act on the part of the TVA pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a). Finally, Conservation Groups have requested that the Court award their costs, including reasonable attorney's fees and expert witness fees, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d).

TVA requests that the Court find that Plaintiffs have failed to meet their burden of proof for Plaintiffs' Ash Pond Complex and Non-Registered Site claims, enter judgment in favor of TVA, and dismiss Plaintiffs' claims for civil penalties, declaratory relief, and injunctive relief.

## VII. SUMMARY OF ANTICIPATED EVIDENTIARY DISPUTES

### A. Conservation Groups

Conservation Groups filed the following motions *in limine*, which they anticipate will resolve a portion of anticipated evidentiary disputes:

1. A motion to exclude any evidence regarding TVA's purported compliance with the Federal *Disposal of Coal Combustion Residuals from Electric Utilities Final Rule*, 40 C.F.R. §§ 257 and 261 *et seq.* (Dkt. 170, 171)
2. A motion to rule that TVA records generated by TVA itself or on its behalf by its agents, and/or documents that TVA has produced in discovery, are authentic in that they satisfy the requirements for authentication pursuant to Federal Rules of Evidence 901 and/or 902. (Dkt. 172, 174).

In addition, other evidentiary issues may arise, including but not limited to, issues related to (a) the relevancy of coal ash contamination at other coal ash impoundments; (b) efforts to remedy such contamination; and, (c) depending on the outcome of pending motions, the relevancy of the Environmental Investigation Plan (as opposed to data generated by TVA that may be a part of the plan) being conducted pursuant to the Agreed Temporary Injunction in the related state court action.

**B. TVA**

TVA has filed four motions in limine relating to anticipated evidentiary disputes.

1. Defendant TVA's Motion to Exclude Testimony at Trial of Anthony Dolle, Alan Sparkman, Dr. Craig Philip, and Frank Fiss. (Doc. 174 and 176.)

2. Defendant TVA's Motion in Limine to Exclude All Evidence, Testimony, and Demands for Relief Concerning Private Wells and Private Drinking Water Supply for Lack of Subject Matter Jurisdiction. (Doc. 177 an 178.)

3. Defendant TVA's Motion in Limine to Exclude Evidence Related to Seeps from the Ash Pond Complex as Set Forth in Plaintiffs'' Proposed Findings of Fact and Conclusions of

Law and the Written Direct Testimony Statement of Barry Sulkin, Mark Quarles, and Dr. Avner Vengosh. (Doc. 179 and 180.)

4. Defendant TVA's Motion in Limine to Exclude the New, Previously Undisclosed Opinions of Barry Sulkin as Untimely and Inadmissible. (Docs. 184 and 185.)

TVA also anticipates evidentiary disputes relating to the following additional matters.

5. Pleadings, orders, and discovery in the related action pending in the Chancery Court for Davidson County Tennessee, *State of Tennessee ex rel. Herbert H. Slatery III v Tennessee Valley Authority*, No. 15-23-IV ("State Enforcement Action.") By way of example, Plaintiffs' trial exhibit list includes discovery and pleadings in the State Enforcement Action (e.g., Doc. 165-1, Exs. 65 and 180), yet Plaintiffs also have requested that the State Court enjoin TVA from disclosing to this Court information relating to the environmental investigation at that is being performed pursuant to an Agreed Temporary Injunction entered in the State Enforcement Action.

6. TVA anticipates, based on the direct testimony statements of Plaintiffs' experts, the trial exhibit list, and Plaintiffs' proposed findings of fact that there likely will be evidentiary disputes relating to the proffer of evidence in support of dismissed claims and the proffer of evidence relating to periods before TDEC reissued the permit in 2012. TVA recognizes, that certain historical information may provide context or foundation for claims arising after the current permit issued, but it is not admissible for purposes of showing any alleged current violation of the permit because it pertains to events that are "wholly past" and/or which occurred well outside the CWA's five-year statute of limitations. Fed. R. Evid. 402; *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987) (holding that 33 U.S.C. § 1365 "does not permit citizen suits for wholly past violations").

## VII. ESTIMATE OF THE ANTICIPATED LENGTH OF THE TRIAL.

Conservation Groups anticipate that the trial may require 5-7 days of the Court's calendar. TVA anticipates that the trial will last 5 days.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

s/ Elizabeth A. Alexander
Elizabeth A. Alexander, BPR No. 19273
Delta Anne Davis, BPR No. 010211
Anne E. Passino, BPR No. 027456
SOUTHERN ENVIRONMENTAL LAW CENTER
2 Victory Avenue, Suite 500
Nashville, TN 37213
Telephone: (615) 921-9470
Facsimile: (615) 921-8011
balexander@selctn.org
adavis@selctn.org
apassino@selctn.org

Frank S. Holleman, III, pro hac vice
SOUTHERN ENVIRONMENTAL LAW CENTER
601 West Rosemary Street
Suite 220
Chapel Hill, NC 27516-2356
Telephone: (919) 967-1450
fholleman@selcnc.org

Jonathan M. Gendzier, pro hac vice
SOUTHERN ENVIRONMENTAL LAW CENTER
201 West Main St.
Suite 14
Charlottesville, VA 22902-5065
jgendzier@selcva.org

*Attorneys for Tennessee Scenic Rivers Association*

Shelby R.B. Ward (BPR No. 030394)
Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TB 37901
Telephone: (865) 522-7007
Fax: (865) 525-4988
Shelby@tcwn.org

Gary A. Davis, Esq.
Davis & Whitlock, P.C.
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: 828.622.0044
Fax: 828.398.0435
gadavis@environattorney.com

*Attorney for Tennessee Clean Water Network*

<u>s/James S. Chase (by permission)</u>
Edwin W. Small (BPR 012347)
Deputy General Counsel
David D. Ayliffe (BPR 024297)
James S. Chase (BPR 020578)
Lane E. McCarty (BPR 028340)
TVA GENERAL COUNSEL'S OFFICE
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.4239
jschase@tva.gov


Attorneys for Tennessee Valley Authority

# CERTIFICATE OF SERVICE

       I hereby certify that the foregoing Joint Proposed Pretrial Order was filed electronically on January 6, 2017, through the Court's Electronic Filing System. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| David D. Ayliffe<br>Tennessee Valley Authority<br>General Counsel's Office<br>400 W Summit Hill Drive<br>Knoxville, TN 37919<br>(865) 632-8964<br>(865) 632-6718 (fax)<br>ddayliffe@tva.gov | Maria V. Gillen<br>Tennessee Valley Authority<br>General Counsel's Office<br>400 W Summit Hill Drive<br>Knoxville, TN 37919<br>(865) 632-7878<br>mvgillen@tva.gov |
| James S. Chase<br>Tennessee Valley Authority<br>General Counsel's Office<br>400 W Summit Hill Drive<br>Knoxville, TN 37919<br>(865) 632-4239<br>(865) 632-3195 (fax)<br>jschase@tva.gov | Edwin W. Small<br>Tennessee Valley Authority<br>General Counsel's Office<br>400 W Summit Hill Drive<br>Knoxville, TN 37902-1499<br>(865) 632-4151<br>(865) 632-3195 (fax)<br>ewsmall@tva.gov |
| Lane E. McCarty<br>Tennessee Valley Authority<br>General Counsel's Office<br>400 W Summit Hill Drive<br>Knoxville, TN 37919<br>(865) 632-2396<br>(865) 632-6718 (fax)<br>lemccarty@tva.gov | |

*Attorneys for Tennessee Valley Authority*

                                                      /s Elizabeth A. Alexander
                                                      ELIZABETH A. ALEXANDER